**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT L. ROBINSON,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:05-CV-214-Y** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.      STATEMENT OF THE CASE

Plaintiff Robert L. Robinson brings this action pursuant to Sections 405(g) and 1383(c)(3)

of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of

Social Security denying his claim for disability benefits under Title II and supplemental security

income or SSI benefits under Title XVI of the Social Security Act.  He applied for disability

insurance and SSI benefits on July 27, 2001, alleging that his disability began on July 16, 2001. (Tr.

324, 334).  His disability insured status expired December 31, 2002.  (Tr. 327).

After the Social Security Administration denied his applications for benefits initially and on

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 1**

reconsideration, Robinson requested a hearing before an administrative law judge (the "ALJ"), and

ALJ Randolph D. Mason held a hearing on February 3, 2003 in Fort Worth, Texas.  Robinson was

not represented by counsel.[1]  On April 18, 2003, the ALJ issued a decision that Robinson was not

disabled and was not entitled to disability or SSI benefits because he was capable of performing a

modified range of light work activity.[2]  (Tr. 13).   The Appeals Council denied Robinson's request

for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner.

(Tr. 3).

B.      STANDARD OF REVIEW

        The Social Security Act defines a disability as a medically determinable physical or mental

impairment lasting at least twelve months that prevents the claimant from engaging in substantial

gainful activity.  42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir.

1999).   To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-

step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently

working at any substantial gainful activity. Substantial gainful activity is defined as work activity

involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527,

416.972.   Second, the claimant must have an impairment or combination of impairments that is

severe. An impairment or combination of impairments is severe if it has more than minimal effect

---

[1]  The ALJ postponed the hearing to allow Robinson additional time to obtain an attorney, but Robinson
subsequently reported that he was unable to find an attorney and wanted to proceed with a hearing and represent
himself.

[2]  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects
weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires
a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of
arm or leg controls.  20 C.F.R. §§ 404.1567(b), 416.967(b).

on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any  work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837

F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000);  *Hollis*, 837 F.2d at 1383.

C.     ISSUES

> 1.     Whether the determination that Robinson has no severe mental impairment is supported by substantial evidence and in accordance with applicable legal standards.
>
> 2.     Whether the ALJ erred in rejecting treating source opinions and assessing Robinson's residual functional capacity without the assistance of a medical source statement.

D.     ADMINISTRATIVE RECORD

> 1.     Treatment History

Robinson has a history of neck and back pain that was aggravated by a repetitive lifting injury he sustained at work.  (Tr. 194). He sought treatment for his injury from the Veterans Administration health services (VA) and indicated that pain medications provided some relief, but did not entirely alleviate his symptoms. Treatment notes from a July 2001 check-up at the VA reflect that his request for a letter of disability was rejected as he was not considered disabled from their point of view.  (Tr. 159-62).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 4**

Family practitioner Clarence Brooks, M.D., prepared a letter dated August 23, 2001 in which he stated that Robinson was currently unable to work due to multiple medical problems, including degenerative cervical disc disease, chronic back pain, hypertension, and bilateral carpal tunnel syndrome. (Tr. 192). No treatment notes from Brooks are included in the administrative record.

Robertson was seen by Vannoy Cole, M.D., on November 13, 2001 for evaluation of his pain complaints. He complained of neck and back pain with numbness and tingling in his fingers that predated his most recent injury at work. (Tr. 205). On examination, Robertson demonstrated a decreased range of motion in his cervical and lumbar spine, but no motor or sensory deficits were noted. (Tr. 206). He was able to walk on his heels, and his gait was within normal limits. Cole diagnosed cervical and lumbar strain, and prescribed conservative treatment consisting of physical therapy and the use of cervical and lumbar supports. (Tr. 206). X-rays were ordered and showed a normal lumbar spine, but some spurring at C5 in Robinson's cervical spine. (Tr. 200).

Robinson saw orthopedic specialist Marco Ochoa, M.D. in December 2001. Robinson complained of neck pain that radiated into his upper extremities. (Tr. 194). He also complained of tingling in his fingertips, daily headaches, and difficulty sleeping. Robinson reported that low back pain radiated into his left leg and also caused numbness and tingling in his toes. (Tr. 194).l

On examination, Robinson was tender to palpation over his neck and lumbar spine, but there was no evidence of muscle spasms. Robinson exhibited normal reflexes in his lower extremities and was able to stand on his toes and heels. (Tr. 194). Robinson exhibited decreased sensation in his fingertips and big toes bilaterally, but an electromyogram (EMG) was interpreted as negative. (Tr. 199). A computed tomography (CT) scan performed in January 2002 confirmed minor spurring

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 5**

at C5-C6 and moderate narrowing of the left neural foramen at that level.  (Tr. 193).  A CT evaluation of Robinson's lumbar spine was interpreted as normal.  (Tr. 193).

During a check-up at the VA on January 24, 2002, Robinson complained of feeling depressed and being in a lot of pain.  He was currently unemployed because of a work-related back injury and felt stressed by his financial problems and back pain.  (Tr. 141, 150).  He complained of feeling depressed and anxious, and his sleep was limited to about two hours each night.  (Tr. 150).  His concentration was good, but he described memory problems.  Robinson was diagnosed with a mood disorder related to his general medical condition and alcohol abuse, which was in long-term remission.  (Tr. 147). His current Global Assessment of Functioning score was assessed as 40, with a high GAF score of 50 during the previous year.[3]  Robinson was given prescriptions for Effexor for depression; Trazadone to help him sleep; gabapentin for anxiety, irritability and pain control; and oxycodone for severe breakthrough pain.  Robinson underwent a mental health assessment and was talkative and cooperative during the interview, but was not interested in participating in any therapy program.  He was referred to a pain management program.  (Tr. 139-40).

In February 2002, Robinson reported tolerating his medications well and sleeping for about six hours each night, but complained  of muscle spasms in his neck and left shoulder.  (Tr. 138).

---

[3] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32  (4th ed. 1994)(DSM-IV).  A  GAF score of 40 reflects some impairment in reality testing or communication (e.g., speech that is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *See id.*  A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *See id.*

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 6**

During follow-up visits to the VA on March 26, 2002 and May 24, 2002, Robinson reported that his medications were helping his mood and anxiety.  (Tr. 137, 298).

During a check-up with VA physicians in May 2002, Robinson complained of aching and throbbing neck pain that radiated into his left shoulder and arm.  He also reported low back pain that radiated into his left leg.  (Tr. 303).  He described the pain as constant and advised that prolonged standing or increased physical activity exacerbated his pain.  Bed rest, heat, and medication relieved his pain.  On examination, Robinson was tender along his spine and demonstrated a reduced range of motion in his neck.  Upper extremity reflexes were diminished, but strength testing was 5/5.  (Tr. 304).  Robinson was also tender along his lumbar spine and experienced pain with range-of-motion testing.  He was able to walk on his heels and toes, but exhibited diminished reflexes in his knees and ankles.  Strength in his lower extremities was assessed as 5/5.  He was considered to be neurologically intact with preserved motor function.  (Tr. 304).  The VA resident physician diagnosed lumbar facet degenerative joint disease and cervical radiculopathy secondary to degenerative disc disease.  (Tr. 305).

Robinson was prescribed the use of a cane in July 2002 for purposes of gait training after fracturing his ankle.  (Tr. 276-84).  He was also given a prescription for methadone, but the medication was discontinued because it was too sedating.  He was given a prescription for Percocet, but complained that it was not strong enough to provide adequate pain relief.  (Tr. 275).

During a follow-up visit in September, Robinson was in fair spirits.  He reported that his behavior was more isolating, but his affect was considered bright and he was stable on his current medications.  Wellbutrin was added to his treatment regimen.  (Tr. 258).  In October 2002, Robinson

<u>**Findings, Conclusions and Recommendation of**</u>
<u>**the United States Magistrate Judge**</u>**–Page 7**

advised the VA staff that he was in fair condition, but was frustrated by his pain.  He was using

Wellbutrin, but continued to isolate himself from others and experienced some irritability.  (Tr. 253).

His Wellbutrin dosage was increased.  Wellbutrin was discontinued in December 2002 after

Robinson reported that it caused hallucinations.  (Tr. 250).  He reported continued feelings of

dysphoria, increased isolation, and low energy levels.  (Tr. 250).

State agency medical consultants reviewed Robinson's disability applications in April 2002

and opined that Robinson's depression and mood disorder caused mild restrictions in his activities

of daily living; moderate difficulty maintaining social functioning; mild difficulties maintaining

concentration, persistence or pace; and no episodes of decompensation.  (Tr. 224).  The state agency

medical consultants also determined that Robinson retained the functional capacity for routine and

repetitive tasks, was capable of interacting adequately with supervisors and coworkers; could adapt

to routine changes in the workplace; and could exercise adequate safety and judgment on the job.

(Tr. 212).  State agency medical consultants also found that Robinson retained the physical capacity

for lifting twenty to fifty pounds occasionally, sitting for up to six hours each day, and standing or

walking for up to six hours during the workday.  (Tr. 229-34, 237-43).

2.      Administrative Hearing

Robinson was born November 1, 1948, and he has a college education.  (Tr. 129, 334).

Robinson testified that he had worked as a formulation or bench chemist for a paint manufacturing

facility, a furniture inspector, a salesman, a counter clerk for an automobile parts supply service, and

a fabric machine operator.  (Tr. 56-64).  He testified that he was no longer able to work due to low

back pain, a degenerative cervical condition, and stomach problems.  (Tr. 64-66).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 8**

Robinson estimated that he could walk approximately a block and a half, (Tr. 64), but walking too far caused a burning sensation that radiated into both legs.  (Tr. 66).  His neck pain caused tingling and burning.  His symptoms were usually under control unless the weather was cold, except his fingers stayed numb.  (Tr. 67). He rated his daily neck pain as a four or five on a scale of ten (with ten being the most severe).  Pain medication reduced his pain level to a three or four. (Tr. 69).  Robinson estimated that he could sit for an hour and a half before needing to change positions.  (Tr. 77).

Robinson testified that he did some housework and prepared meals, but he did not use a vacuum or mop.  (Tr. 74).  Robinson was able to bathe himself.  He was also able to drive and shop for groceries.  He had no hobbies.  He took his medication each morning, watched television or read the paper, took a short walk, and  performed light chores.  (Tr. 76).  He testified that he was able to lift a gallon of milk in each hand.   (Tr. 77).

Vocational expert Barbara Dunlap also testified during the hearing.  She testified that work as a chemist and salesman were skilled jobs that usually required light exertion, but had required medium exertion as Robinson described his duties.  (Tr. 82-83).  The jobs of furniture inspector and fabric machine operator were both classified as skilled work requiring medium exertion.  (Tr. 83). The ALJ asked Dunlap to consider an individual of Robinson's age and education who was capable of light work, but required frequent opportunities throughout the workday to sit or stand, no constant repetition of motion with his hands, and work at the lower end of detailed instructions.  (Tr. 83, 88-90).  Dunlap testified that suitable jobs included telephone sales, clerical jobs, sorter/inspector positions, and assembly-type work.  (Tr. 84-86).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 9**

3.      ALJ Decision

The ALJ found that Robinson had not engaged in substantial gainful activity since his alleged onset date and had multiple severe impairments, including degenerative disc disease, arthritis, hypertension, and carpal tunnel syndrome. (Tr. 27, 30).  The ALJ found that Robinson had no impairment or combination of impairments meeting or equaling the severity criteria of any listed impairment.  The ALJ found that Robinson's subjective complaints reflected some functional limitations, but did not preclude Robinson from performing light work that allowed frequent opportunities to sit or stand, did not require constant repetitive hand motions, and was limited to work at the lower end of detailed instruction.  (Tr. 28).

The ALJ determined that Robinson's RFC was not compatible with his past work,  (Tr. 28), but based on the vocational expert's testimony, the ALJ found that there were a significant number of jobs available in the national economy that Robinson could perform.  (Tr. 29).  Accordingly, Robinson was not considered disabled or entitled to benefits at any time through the date of the ALJ's decision.  (Tr. 29, 31).

D.      DISCUSSION

1.      Mental Impairment

Robinson contends that the determination that he has no severe mental impairment is based upon improper legal standards and unsupported by substantial evidence because the ALJ failed to address the assessments of the state agency medical consultants, who found that Robinson had a moderate impairment in social functioning.

Findings of fact made by state agency medical and psychological consultants regarding the

nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at the administrative hearing and Appeals Council levels of review. 20 C.F.R. §404.1527(f); SOCIAL SECURITY RULING 96-6p.  The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions.  SOCIAL SECURITY RULING 96-6p.

Social Security Rulings are published under authority of the Commissioner and are binding on the Administration.   *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(per curiam).  An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required.  *Hall*, 660 F.2d at 119, *cited in Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).  Should the agency violate its internal rules and prejudice result, the proceedings are tainted and any action taken cannot stand.  *Hall*, 660 F.2d at 119.

The ALJ did not discuss the weight given to the state agency evaluation of Robinson's mental impairments, but the ALJ did address the issue of a severe mental impairment.  The Social Security disability regulations outline a process (referred to as "the technique") to be used for evaluation of mental impairments.  First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Once an impairment is found, the administration will rate the degree of functional limitation resulting from the impairment.  *Id*. §§ 404.1520a(b)(2), 416.920a(b)(2).  Four broad functional areas are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation.  *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3).   After rating the claimant's functional limitations, the

<u>**Findings, Conclusions and Recommendation of**</u>
<u>**the United States Magistrate Judge**</u>–Page 11

administration determines whether the impairment is severe or not severe given the degree of functional loss found in the four given areas. *Id*. §§ 404.1520a(d), 416.920a(d). When the degree of mental limitation in the four given areas is none or mild, the mental impairment is generally not found to be severe unless the evidence otherwise indicates more than minimal limitation in the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520a(d)(1).

A review of the ALJ's decision reflects that the ALJ substantially followed the appropriate technique. Specifically, the ALJ found only mild impairment in Robinson's activities of daily living, social functioning, and concentration, persistence or pace. No episodes of decompensation were noted. (Tr. 15). The state agency medical consultants similarly found mild restriction in Robinson's activities of daily living and his ability to maintain concentration or pace, and also found no episodes of decompensation. (Tr. 224). The state agency medical consultants, however, found moderate impairment in Robinson's ability to maintain social functioning. *Id*.

The ALJ acknowledged Robinson's complaints of isolation, but also noted that Robinson had a friend assist him in completing the application process for disability insurance and SSI benefits. Although Robinson asserts that this evidence is not conclusive, his interaction with others and ability to ask others for assistance in his personal affairs has some relevance to the assessment of his social functioning. Robinson also complains of the ALJ's failure to ask him any questions during the hearing regarding his social functioning, but there is no showing of what additional information Robinson would have provided if questioned. The ALJ observed that Robinson consistently reported being less irritable and anxious when he took his medications, and regardless

of finding no severe mental impairment, the ALJ considered the effect of Robinson's depression in combination with his other impairments during subsequent steps of the sequential evaluation process. (Tr. 16). It is also significant that the ALJ's findings are consistent with the state agency medical consultants' determination that Robinson retained the functional capacity for routine and repetitive tasks, was capable of interacting adequately with supervisors and coworkers; could adapt to routine changes in the workplace; and could exercise adequate safety and judgment on the job. (Tr. 15, 212).

Although the ALJ should have expressly addressed the opinions offered by the non-examining state agency medical consultants, Robinson has not demonstrated prejudice that would warrant overturning the Commissioner's decision, nor has he demonstrated that the ALJ's determination is unsupported by substantial evidence.

2.      Residual Functional Capacity Assessment

Robinson contends that the ALJ failed to fully and fairly develop the evidence relevant to an assessment of Robinson's residual functional capacity (RFC). The ALJ has a duty to develop the facts fully and fairly, and if he does not satisfy this duty, his decision is not substantially justified. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995).

Robinson complains that the ALJ rejected the disability opinion from Brooks, a treating physician, without having another medical source statement to rely on as support for the RFC assessment. An ALJ should usually request a medical source statement describing the types of work

that a claimant is still capable of performing, but the absence of such a statement does not necessarily make the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Instead, the inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record. *Id.*

The ALJ considered Brooks' August 2001 opinion that Robinson was unable to work, but observed that opinions on a claimant's ability to work are not medical opinions entitled to special significance because they address the ultimate issue of disability, which is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Brooks did not address the impact of Robinson's impairments on his residual functional capacity or refer to any medical signs or laboratory findings to support his opinion. The ALJ further found that Brooks offered that opinion shortly after Robinson's work-related injury and before later medical treatment proved beneficial. (Tr. 17). Accordingly, the ALJ assigned limited value to Brooks' opinion.

After reviewing Robinson's treatment history and diagnostic studies, the ALJ found that Robinson had established underlying medically determinable impairments that could cause some functional limitations; however, the ALJ found that Robinson's symptoms suggested more severe impairments than the objective medical evidence would substantiate and were inconsistent with his daily activities. (Tr. 15-16). *Reyes v. Sullivan,* 915 F.2d 151, 155 (5th Cir.1990) (per curiam) (approving administrative consideration of claimant's daily activities when deciding claimant's disability status). The ALJ also noted that Robinson's symptoms were responsive to treatment. (Tr. 16). Pain in particular is a disabling condition only when constant, unremitting and wholly

**Findings, Conclusions and Recommendation of the United States Magistrate Judge**–Page 14

unresponsive to therapeutic treatment.  *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988).

The reasons outlined in the ALJ's decision reflect careful consideration of the record and constitute good cause for not adopting Brooks' opinion.  In addition, ALJ based the disability determination on Robinson's testimony about his daily capabilities and the medical evidence that did not reflect objective findings that would support disability.  The ALJ fully and fairly developed the facts necessary to make a disability determination.  Robinson has not demonstrated that the Commissioner's assessment of his residual functional capacity is unsupported by substantial evidence or a product of legal error.

<u>RECOMMENDATION</u>

It is recommended that the Commissioner's decision be affirmed.

<u>NOTICE OF RIGHT TO OBJECT TO PROPOSED</u>
<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION</u>
<u>AND CONSEQUENCES OF FAILURE TO OBJECT</u>

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until February 7, 2006.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.

<u>**Findings, Conclusions and Recommendation of**</u>
<u>**the United States Magistrate Judge**</u>**–Page 15**

*See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

<u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until February 7, 2006 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JANUARY 13, 2006.


_____/s/  Charles Bleil_____

CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE


**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 16**